Case number 09-3152, consolidated with 09-3283, Donald Van Gelderen v. David Musselby. Hi. Counsel. May it please the Court, good morning. David Morsalski for the defendant. I'd like to reserve five minutes for rebuttal, if I may. Let me, since I know, and I've been before the Court before, I know the Court has read the briefs, and is familiar with the material, so let me deal with what I feel are the important points here. This is a case where, very respectfully, we don't believe the case should have gone to the jury. And I think that's somewhat reflected in the number of motions for summary judgment that you must have filed. Actually, I was in trial constantly. That's right, your colleague was. I apologize. It seems a little unnecessary. And I'll tell you, one of the problems with it is that oftentimes, when you're so focused on your summary judgment motions, you lose sight of what's coming up. And I found that the trial itself might have been a little lacking on certain respects, because it leaves some questions unanswered. And I'll go ahead and ask you the question right here. Sure. And that concerns the plaintiff's assertion on page 12 of their brief, and this is a direct vote, there is no evidence that Donald Van Gelderen was aware of the stairs when he opened the door and fell. And that's a pretty remarkable statement to make, and it may be accurate. I'm not suggesting that it's not accurate. I am. Well, I'll tell you this. If you want to say that it's not accurate, and I looked at the reply brief for that particular, for your reply to that particular assertion, and I don't really see, and this is what I was looking for. I was looking for a quote from the trial record. It's not in your reply brief. It's in the original brief. Well, you would think that if they make that assertion in their responsive brief, that you would come back and say this is a response to their assertion. And I would suggest that if they make that assertion in their responsive brief, they aren't reading the record the way you're reading it, because otherwise they wouldn't have said it to begin with. But anyway, my point is this, that it would seem to me that it would come out that the curtain installer would have been asked, if not the number of times that he visited the home, certainly the dates on which he visited the home, and the assertion was that he was required to enter through that side entrance, which would necessarily mean that he, each time that he entered, he would have to pass that stairway. Without going to pick up the reply brief, because I believe it's in there, if you look at our statement of facts, we quote directly from the record, Your Honor. It's on page 8. All right. It says that plaintiff admitted, and we're quoting from the supplemental record, C239 at 97 and C244 at 108. Plaintiff said he must have used the side door and stated, quote, I'm sure I did use the side door on several occasions before he fell down the stairs on a subsequent occasion. The question is, did he say that I was aware that there were descending stairs immediately to the left of that side entrance? Did he say that on the record? He said, in so many words, no. Why not? Did he say because he said he had gone into the room? That's what cross-examination is all about. Well, Justice Bauer or Judge Bauer in the Seventh Circuit once described the work of appellate counsel as coming on after the parade leaves or on the battlefield to shoot the wounded. So my task is to deal with the record. Yours is to revive the wounded. In this case, I think recessive. Well, you might be able to infer from the record that this fellow had seen the stairs multiple times when he was in and out of that house, whether he came in the back, the side door or not. Well, yeah. And he also said there were alternatives. There were two different entrances, and there's nothing in this record. They say he was told he had to use this entrance. There's no record. There's no testimony that says that. We pointed that out in our report. Here's another question I have. Did your expert say that it was human nature, and here's the quote, for a person to take a step to the right as he tried to go through the door that opened from right to left? Is that what your expert said? That's what he said. It seems to me, I mean, I've opened many doors, and I don't step to the right or left. I step backward. And that's exactly what an individual could have done and should have done, and I'm sure the residents of that home did every time that they opened that door. You can step backward into that hallway. Didn't he say, though, that you would expect one to do either, go to the right or step backward? Didn't he say that, Cook? Yes. But can I go to a more basic point? Under Illinois law, stairways are generally not dangerous instrumentality. Now, let's start with a simple premise. They're not, or they're generally considered to be a hazard that people have to be watching for. Yes, people are aware of it. It's acknowledged. They're stairs. They're stairs. There are stairs in this building. People are aware. This plaintiff was aware the stairs were there. No question about it. He said, I've been in and out several times before this. He also had an alternative entrance, which is not disputed. So the statement in their brief that he was told he had to use his entrance, there's no cite to that because it doesn't exist. He never said it. But more importantly, we have David Hogan, who's a homeowner, doesn't design the house. Everything is code. Nobody disputes that. There's no violations here. This is an ordinary home. They say, well, he was aware of the danger. But under the restatement, it doesn't matter that the architect or the designer or that these were up to code, that he's somehow exempt from the premises liability. I'm not saying he's exempt if it leaves the court. What I'm saying is there's no evidence. If this is a dangerous condition, and I don't know that it is, you still have to show that the plaintiff was aware. All they say is, well, he's a homeowner. He went through a punch list. There's no evidence before. Well, they said he was active in the construction. When the side door got larger, he approved that. Then when it got closer to the stairwell, he was aware of that. So does that show that he was? First of all, does that show that it was a dangerous setting? Is there anything in the record saying he was aware of it? The question is really, was this something that the jury could consider based on a fellow that worked with him that day? That's really what we have here. I don't think so. We also have an assumption of risk. You discount this cook. But either way, he's still an architect, and he gave an opinion. With no basis. He said, well, I have no literature. What sort of pretrial challenge was there to the expert witness? There was objection, first of all, as to which witness. You have Niven, who was permitted to testify as an expert. But he wasn't an expert. Of course he wasn't. And there was an objection to that, and the jury heard that. Well, they say you weren't surprised by that. You really didn't object at trial. That's why we have rules. And there wasn't a contemporaneous objection. We quoted it. Well, you do argue that there were several trial errors that would warrant a new trial. His testimony is certainly one of the complaints. It's not just his testimony. Here's a guy who has no expertise in anything. He's not disclosed as an expert. He's not listed as an expert. Did you weigh this issue? No. Respectfully, no. If there's an objection, I can give you the. Mr. Nowazowski, hold on. Let's not go down that road unless you're willing to back it up. Are you saying that the circuit court judge declared him to be an expert, or are you saying that his testimony somehow came out as if it were an expert opinion, and it may just have been a lay opinion? What are you saying? Page supplemental record, volume 2, C135, page 27. There was an objection, first of all, for lack of disclosure. This is trial counsel. There's no foundation from testifying as an expert. The court overruled. He was deposed. Yes. He gave the same testimony at his deposition. I don't recall. Let me ask. Did he ask? For clarification, Judge, are you saying that he is an expert here and he can, in fact, testify? Or is he simply saying whatever your grounds for your objection are, they're overruled because there are other grounds to allow this testimony to come in. I'm not sure that we haven't expressed ruling by the trial judge that Mr. Nevin was, in fact, testifying as an expert. That's my point. And, Judge, and very respectfully, I disagree. There's an objection to the lack of expertise. It's overruled. Short of getting into a war with the judge in front of a jury. He asked for a sidebar. You asked for a. The objection has already been overruled. I've seen this court castigate trial lawyers for not arguing after there's a ruling. But, again, we don't need to get there because. But don't you want to have a record for us to review? And if you want us to say that the trial judge ruled this person to be an expert, then I want a ruling by the trial judge saying that the person is an expert before I'm going to say that's exactly what the trial judge did. And I'm not saying you need to do that. I'm saying to keep the court geared in permitting the testimony. Mr. Nowazowski, as you can sense, there are a lot of questions we have. I will give you no question at least five minutes and probably more. But I'd like to get an idea of just what plaintiff's position is. So if you have some comments you'd like to wrap up. I do want to ask you, how do you get around Elkhorn and Glass's suggestion that if there's an expert testifying to the unreasonably dangerous aspect of STAIRS, then the question really should be one of fact that would go to the jury. Except here you have, and we've pointed out the reason I'm not going to beat it to death. This man had a naked opinion. It was based on nothing other than a personal. Well, if we don't discount him the way you are, how do you? So you are agreeing that if there's a legitimate expert that's giving an opinion, then you really can't get around Elkhorn? Is that what you're saying today? No, but I'm saying that. And Glass kind of picks up on that and says, you know, that we don't have an expert. There's numerous cases which we cited saying simply because somebody says, it's my opinion this is dangerous, doesn't make it dangerous. We also have the assumption of the risk issue. We have the plaintiff who was aware of the STAIRS, had alternative means of getting in without using that door. That becomes a factual question, doesn't it? Very respectfully, no. He admitted that he had an alternative base means of ingress. No, but I'm not sure I understand your position. Are you saying that as a matter of law. Yes. As a matter of law, we would have to rule that his knowledge that there was an alternative means of getting into the home that he assumed certain risk by going in the side entrance. Yes, and that's what the Supreme Court says as well. What if he didn't know? Their position in your brief is simply he was told he had to use this one dangerous entrance. And we pointed out that's no testament to that. More importantly, there's contrary testimony saying there was an alternative way to get in which would have avoided the door. And he was not, there's nothing saying he was told he had to use it. Isn't the real question one of unreasonably dangerous? Yes. And so aren't you conceding that the stairways are dangerous, that the downward stair was dangerous? Any stairway is dangerous but not unreasonably dangerous. Right. And so the question is what difference does it make that he had two entrances, that either one of them he could have gained entrance to the house? Then this Court would be overruling the Illinois Supreme Court saying even if you take that it is unreasonably dangerous, which we don't agree that it is. Right. When somebody acknowledges he saw the stairs, he was aware of it, and they try to use the Kmart exception saying this is the only way he could come in and he was ordered to do this, there's no evidence of that. So I'm saying that this Court, I'd like to reserve my time. You will. You will get, I'm sure, ample time to respond because we have a lot of questions. Thank you. Thank you. Good morning, Justices. Good morning. David Wise, WISE for the Appellee. As you can tell, Mr. Wise, questions. But let's start with the preliminary question. Sure. It is a question of law as to whether or not a duty existed on the part of the homeowner regarding that dangerous stairway descending into the basement. Sure. That was a question of law. And given that it's a question of law, what happens if the trial judge is confronted with a summary judgment motion saying that there is no duty, and the trial judge says motion denied. Does that eliminate that question of law regarding the existence or none of duty? No. It's a question of law. So on review before us, even though the summary judgment motion has merged into the judgment, in a sense, that summary judgment issue of question of law as to the existence of a duty is pretty much the question of a JNOV. Sure. And so if we were to say that the trial judge got it wrong when he denied the summary judgment motion, then we would have to enter that JNOV as a matter of law if we find no duty of care. If there's no duty, I think that's certainly something you can address. But that's what the question is. If you're asking me what can you review in order to determine whether or not in this case there's a duty? No. Let's say we're inclined to do that. What would be your best argument that a duty does exist? Under the facts of this case, why the open and obvious defense doesn't abrogate the duty? No, I'm saying the duty itself. How do you get to that duty? My understanding from your brief is that the expert's testimony, Mr. Cook, made the duty question one of fact. Or relying on Alcorn, the language Justice McBride was referring to in Alcorn and Glass, regarding summary judgment being sustained in those cases because they had no expert. And in this case, you did have an expert. But that makes it a jury question and not a question of law. I don't think that's necessarily. We don't need an expert. I think the Ward case did not have an expert. And I believe that the Alcorn case and Glass, where they do say, they point out almost, well, there is no expert to say this is dangerous. Had there been one, maybe there'd be something for us to look at. Well, Alcorn really didn't say that. I think Glass suggests that that's what they said. But in Alcorn, the stairs are sort of similar to this case. They were open. They were next to another entrance. And it was really kind of a similar claim. Here's the danger, I think, Your Honor, with respect to when we start taking what are oftentimes questions of fact and converting them or finding them questions of law under particular fact patterns. The Alcorn case points out clearly that, as we all know with all stairs, almost all of them empty onto a hallway, as an example. And Mrs. Alcorn, who's walking into the house, essentially really all she did was, as walking down the hallway, step off the edge of the hallway down the stairs. Well, every house has that condition. And I submit that it's simply. Well, if there's a door over the stairs, it doesn't. Well, if there's no landing, if the stairs commence immediately on the other side of that door, as she opened that door, thinking that there was going to be a landing, and there was no landing, and so she immediately falls down the stairs, of course that should suggest that there is a duty to have warned her before she opened that door. Sure. Because nobody inspects the door, looks up before actually walking down, because everybody expects a landing. There was no landing in that case. Well, no, that's actually. There was a small landing. There's a case in CITES, too. It was the hallway. Yes, the alcohol versus lupus. Exactly. I want to ask you a question, though. How does a homeowner have a duty to exercise care of an unreasonable condition if you need an expert to tell the jury that this is unreasonably dangerous? That's a very interesting question. That's my question. I'm going to answer that. I think that's a box that this Glass and Alcorn case is trying, is accidentally, I think, putting parties in. You need an expert, if that's what one is to read those cases. And on the other hand, you could never win. But I think the answer is this, Your Honor. The expert said it was unreasonably dangerous, but it is also something that when we look at Niven's testimony and the fact that Mr. Hoken lived there, and this is only five inches away, one might ask, do you even need an expert to say that? It's admissible. It could be an expert opinion, but Mr. Hoken should know it. Well, counsel for the defendant is arguing that Niven was giving an expert opinion, and in a sense I think one could certainly read it that way. But how do you explain, though, a homeowner having to determine something is unreasonably dangerous? Let's throw out Mr. Wood. There was no evidence of anyone having any kind of accident before this incident occurred, was there? No, not that we know of. What is in the record then, factually, to establish that the homeowner had a reason to know that the stairway was unreasonably dangerous? This, and I respectfully disagree with you, Your Honor, when you said how you open a door. I do actually think the way people open a door and the way I open a door oftentimes is I will open it and walk around it. There are only five inches between the edge of the door when you're opening it and this hole on the right to go down, and that's the problem. Let me stop you right there. Sure. He certainly could have opened the door and stepped backwards into the hallway and not tried to squeeze around the door on the landing. True. I agree, he could have, assuming he knew that the stairway was there. And that's the question. One of the questions is, did he know? And you asserted that he didn't know. They claim he did know. But let's set that aside for the moment. Let's go back to Justice McBride's question. And I think the bottom line question is, what made this configuration of the door, the landing, and the stairway unreasonably dangerous? Unreasonably dangerous. The door. The way the door was situated relative to the hole to go down the stairs. That's what made the stairway unreasonably dangerous. The stairway in and of itself. What about the door? Because the way the door opens, opening from right to left, requires you to get, unless you open it like Justice Garcia. And I'm not. And are you really suggesting that you or some juror should be able to conclude that that was unreasonably dangerous because the door handle was on one side and the door enters in or out? Are you really suggesting that a homeowner should pick that up and know that that was unreasonably dangerous? I do. Or does an expert need to tell the jury that? No. I think a homeowner should know that. Because I do think that if you're going through that door, anybody would come close to that edge. Now, if you live there like Mr. Holkind did, you're going to be much more cognizant of it. And you'll probably steer clear of it. I'm sure he does. But if you're not, and you're not the expert. Was he asked about that? Yeah. He said he could go through that door. But he, of course, knows the holes there. Was there testimony that this area, that they were leaving at a time of day when it was somewhat dark in there? Yes. So is there a claim that this was insufficiently lit? Or were they actually operating in a situation where they should be a little more careful then? Well, it would go to comparative negligence to answer your first question. That is in the charging instruction, whether it was properly illuminated. With respect to comparative negligence, Niven said he didn't even know both of them. Niven said when he came in, he didn't even notice a stair there. He didn't notice it either. On the way out, he didn't even know that Van Gelderen fell downstairs. He just disappeared. Does it matter that Niven didn't know? Because he was there for the first and only time that day. So the plaintiff had been there multiple times. Had he not? He had been, yes. How many times? I would guess, and it's unclear on the record. And it's unclear because it wasn't really developed. But I'm guessing somewhere around eight. But that was based on a statement from a deposition. The deposition asked him and he said, maybe you're right. So it could have been eight times in the building. But he never said. He knew that stair was there. So we know that if it were eight times, eight times he had to have gone in through that side entrance. No. Well, I thought he testified that he had to go through that side entrance. There is testimony of that. But there's also testimony in the trial record where he went in the garage. Is there really testimony that he had to go in that side entrance? Is that really in the record? I don't think that's in the trial record. I think what happened is that's in the deposition. Then where would it be? Well, I think it's in the deposition somewhere. Now, I recognize the problem. We're not dealing with the deposition unless he was cross-examined about that testimony. He was. I don't think he was cross-examined. You're actually saying that there really wasn't testimony that he had to go in and out that side door. I couldn't find any testimony in the trial record that said that. I will only say, to some extent, like Mr. Silva. Let me come back, but I would concede that. Yes, I agree. Let me go back to the end. I think Justice McBride was trying to get at the role the expert played in establishing a duty or letting a homeowner know that this configuration is unreasonably dangerous. Because, first, as I said, summary judgment wrongly decided by a trial judge doesn't mean that a duty exists. And I also, and I know you've skirted around this, but I thought your position was that this case is distinguishable from Alcorn and Glass because the expert was present. And then the question for me is, can the testimony of an expert give rise to a duty of care on the part of the homeowner when the existence of the duty is a question of law and we don't care whether you have an expert or not, unless the expert can say that under industry standards, the configuration violates certain standards and, therefore, is unreasonably dangerous. If there isn't such testimony, it seems to me that the existence of an expert willing to come in and say, this is unreasonably dangerous, doesn't tie our hands one bit. If we decide that there's no duty of care to begin with because the configuration was not unreasonably dangerous, it was certainly dangerous, but it was approved by the municipality, it was approved by the building code, well, it was within the building code provisions, why should we start allowing experts, the experts willing to come in and testify that something's unreasonably dangerous to decide, really, a question of law? Well, I think this reason, because when there's a question of is there a duty, oftentimes it's a mixed question of law and fact. Give me a case that talks about a mixed question of duty and fact, because to me a duty is a question of law exclusively. Now applying that duty to the facts of a particular case, certainly that becomes a mixed question, but the existence or not of a duty of care is solely a question of law. Well, it's a question of law in the sense that is there, the question of whether there's a duty, a property owner owes a duty of ordinary care to people on his property. The real question is what duty does he owe under the facts of the particular case? Well, when it comes to stairways, it's generally if they're unreasonably dangerous, there's a duty. Right, but how do you as the judge, not you, but how does the trial judge? Stairs in general, unless they're masked or obscured in some way, they don't generally become unreasonably dangerous. They're generally considered a hazard, but they don't become unreasonably dangerous unless they are configured in a way that they are masked or obscured to the human eye. That I saw in Glass and Alcorn, and I think what's happening is we're taking stairs and treating them separately from any other condition that might be on the one hand open and obvious, but under some circumstances, depending on how the particular configuration is on the land, may still give rise to a duty. And this just stairs comment came from either Glass or Alcorn. In Ward, and everybody cites to that case I recognize, but in Ward they're like, well, it's just a pole. And if you took Ward and said, well, when they're walking out, because they were looking with their board and they walked into this pole, there's a case because the landowner there should foresee that. Whereas, they also say, if the pole was further away, or maybe if they're walking in, there may not be a case. This is how I believe we should frame the case of these stairs as compared to the Glass and Alcorn stairs. Just like the pole in Ward compared to other ways that case could have transpired. So in Glass and Alcorn, there were... Why don't we talk about the trial errors. First of all, this fellow, Niven, are you suggesting that he wasn't giving an expert opinion when he told the jury that the door... Isn't he the one with the door handle? Should it be on the other side? No. He's the fellow who was the eyewitness. He's not an expert. No, but what did he say? He said this. He's explaining the way Van Gelder was opening the door and walked around it and went down the hole. If the door had been opened the other way... He's not saying it should. He's just saying if it had opened the other way, the door would have blocked the hole that he fell down. Except it wouldn't have blocked the door. Was it Wood that said that the door handle should be on the other side? Cook said it. Cook, excuse me. So you're saying when Niven gave that opinion, there was nothing expert about that at all? He didn't say it should have been on the other side. He didn't offer that opinion at all. Did he opine about it, though? No. I think the question was would he have... I think you have to ask this question, and here's why. It's one thing to say, you know, I didn't see the stairs. I was there, but I didn't notice the stairs. It's another to say if the door had opened this way, then this would have corrected this and it wouldn't have been unreasonably dangerous. Isn't that really what he was saying? No. He was giving an opinion about whether this was unreasonably dangerous. No. Well, that's what they argue. I know. How about the wealth? How about the wealth of the plaintiff? How about the 15,000 square foot home? How about the swimming pool? Why were these things discussed in front of the jury? And forget about opening statements. I'm talking about in the evidence portion of the trial. Some of it, Judge, would have been with respect to how many entrances and doors there were, which I think was part of the defense case. That has to do with 15,000 square feet? The doors where they were? Really? I mean, you know, there's pretty tiny houses that have a side door, have a front door, have a back door. You are asking me to disregard the opening statements, and I recognize that. They're not evidence. The jury's told that. I recognize that. I just want to know why was there this testimony, and what about the swimming pool? I mean, why was this injected into the trial? Why was that evidence introduced? I don't know. I don't know. I can't. What do you think the effect of that evidence was? I don't think there was a big effect of that evidence. And I know you expect that. But we do have cases against corporations. All right. So that's what you're comparing him to? No, no, no. What I'm saying, though, is I think you're certainly comparing him to, great, a very wealthy individual. No question about that. Well, I'm sure someone can take that from the case. You're right. Well, that's an error. Now, what about the doorway, the child guard? Why does that come in when you have a, you know, I mean, why does that come in when he said there hadn't been any accidents and, you know, he really hadn't done anything? I think what happened there is Mr. Hoken and his attorney overstepped in what they should have done because they do have a change. And any lawyer who's working these cases knows that when you are trying to make sure that doesn't come in, you tread carefully on what you ask and what answers you're giving. And you tell the guy, I'm not going to be asking you certain things. Don't go volunteering. But this question was asked, and there's never been an accident since. Well, there is now a gate up there. Yeah. What kind of a gate is it? It's a child gate, which is probably up to your waist or up to your thighs. Is it even up that high? Was it described? There's a photo of it, I think. I've seen it. And that shouldn't come in? He opened the door to it. We are reviewing those errors, excuse me, for an abuse of discretion. Let me ask you a couple questions regarding the facts as well. Sure. You assert that the plaintiff stepped to the right and then disappeared, like you say here. Did he say he stepped to the right? No. He doesn't remember. Well, he does remember opening the door. There is testimony regarding those five inches you have. If you're going to open the door and try to let the door squeeze around you, you only have five inches. And the suggestion I thought originally was that he lost his balance and toppled backwards because his back was to the descending stairs into the basement. And so I'm just not sure where that stepping to the right, suggesting that he disappears into that black hole that you referred to just a little while ago. Because that's not really the testimony, is it? It's from Niven. Yes, it is, Judge. Well, that's Niven. It's not from Niven. It is Niven, right. But, I mean, Mr. Van Gelder. Let me ask you another question regarding the you say in the brief that the door forced the plaintiff, suggesting that the door itself pushed him down or pushed or gave him momentum to go in the direction of the open stairway. I recognize what you said. That is actually a quote from Niven at trial. And while it was never developed by anybody in the trial, what I think it meant was in the way I would interpret it. Well, let me get to my point. My point is that a door doesn't force anything. The door doesn't move by itself. And so to the extent you're saying that the door forced the plaintiff down the stairs, you're really saying that the plaintiff himself forced himself down the stairs because he's opening the door. And quite honestly, he could have taken one step downward. There was one step down the stairs. He could have stepped down that stairs and allowed the door to completely open. But, no, he tried to stay on that five-inch landing that the door didn't reach as it was making its path to the opening. True? No. Here's my response. No offense. You say he could have taken a step down. If he knew the stairs were there, I would assume he would have done that, like anybody. What did he think was there? I don't think he knew anything. He thought it was a closet. I want to go back one more time. Do the errors in this case prejudice the defendant when we know the jury found your client 50% contributorily negligent? Should this go back for another trial without any of this? Do we take that into account? Without Niven giving his expert opinion, without the testimony of the little child, whatever, preventive measure, without all this testimony regarding what to some people would appear to be wealth of the defendant? Okay. I think no. I think because the facts of the case are so simple that all of that stuff doesn't matter. Let me ask you this question related to that. I'm sorry I'm interrupting. Would it be wrong for us to say in light of the 50-50 ruling by the jury that he was 50% liable and the homeowner was 50% liable that we might see, we would look at those trial errors in the backdrop of that 50-50 decision by the jury? Would we be wrong? I think there's cases I've read, I didn't cite any, where when there's closely contested you do look at certain errors more closely. I know there's cases out there that say that. And I wouldn't tell you that's not the law because I know it is. But I think that those issues are not what drove that case. And I don't think that that. Given the testimony that you've just addressed regarding the plaintiff and given Mr. Niven's testimony, what do you think drove the jury to put 50% responsibility on the plaintiff? That's an excellent question. I would imagine that they were wondering why he didn't look to see what was down the hole, why he didn't. Because he certainly didn't. Were photographs introduced? Yes, photographs were introduced. They were. And there was a photograph introduced showing roughly how dim. Didn't one of the photographs show from the outside looking in you could see the stairway? That I don't recall. Well, it's represented in the record that one of the photographs, if you're coming in that side door, that the stairs are apparent. Well, that would bring us, in my estimation, to the ward type of analysis where, on the one hand, you do have something that would maybe be open and obvious. And at the same time, and if we even look at the 343A comment F, there's an illustration, and it's where a kid or a person, I forget who, gets up on a school. They go up a step. They walk up that step, sit on the ice cream, eat their ice cream. When they're stepping off, they forget the step is there and they fall. And, of course, it might be reasonable to anticipate that someone might forget that. And like here, if people open the door the way I think people open the door, when they walk around, it might be something. And this is what I mean. It doesn't matter, I guess, to anybody. But it is something that should be considered that you're opening a door and it's five inches away of a drop off. That's what I think the case revolves around. Mr. Weiss, I do want to commend you for your willingness to tolerate some of my questions. I think you've done a great job, but I do want you to wrap it up. Well, I don't know if we're interested in the post-judgment matters. It's kind of curious. It is a curious situation. And I really wonder why go through those supplemental, if that's what they're called. I mean, why rush to collection when there's no need to rush to collection? I will say only this regarding that. I think that there are probably reasons why those rules are written the way they are and there are specialists in the business of post-judgment collection. And this is not fully developed in this case. We read the rule. Let me ask you this. You're very candid, Mr. Weiss. So let me ask you, what do you think the better rule should be? Should we have a rule that says collections should be stayed until post-trial motions are ruled upon at the very least? Because it's not unheard of to have a verdict set aside. It's not unheard of to have a reduction in the award that was given by the jury. All those matters would be seen to be would weigh in favor of, efficiency would weigh in favor of not doing things that are going to be undone. I think it probably would make sense. But as the rule is written, I think Judge White might have had his hands tied following those rules. At least according to how he read it. I understand. And my only closing comment, Your Honors, would be with respect to the duty, and I recognize it's a question of law, but there's each, even though we have the same condition, depending on the facts and how that condition interacts with the people, it could be a duty, and turn into questions of fact, and then comparative. Or depending on how the facts are, then it's a question of law and there's no way to recover. I think this one fell within the former, and that given the way the testimony developed about how Mr. Van Gelderen encountered that, if he was opening the door as it was described, I think that turned this into more of the Ward 343A, Comment F approach as opposed to the Elkhorn class. Right out of the box. Gone. Can't recover falling downstairs in Illinois. All right. Thank you very much. Thank you. Mr. Novoselsky? May it please the Court, let me focus very simply on something listening both came to mind. Counsel said this is a Ward case. It is in the reply brief. If you look at page 13, here's the plaintiff's testimony in his own words. He admitted he must have gone through this entrance several times before. He said, I'm sure I did use this entrance. Now, Ward v. Kmart, which they talk about, deals with open and obvious, says you can't pretend you don't see what's open and obvious. So this gentleman admitted at trial that he had gone through, first of all, that he wasn't forced to go this way. That's also on the record. There was an alternative. But he said it's at page 8, and it's page 13 of our reply brief, Your Honor. And he said, I'm sure I did use this entrance when I didn't have it for me. So here we have somebody who, under Ward, wasn't forced to do this. This is something he was aware of as a matter of law. You can't change your own testimony. On cross-examination, he said, yes, I'd been through this before. Your Honor is correct. The record reflects it. When you open the door, you can see the stairway. So if the last time he goes through it might have been a little dim, and I'll address that in a second. It doesn't matter because on the prior occasions, he was charged with knowledge of what he saw. Given all that, Mr. Novoselsky, you have three motions for summary judgment, and each motion was denied. And, Judge, when I clerked up here, my boss used to tell me we've got big erasers up here. We don't worry about what the trial judge does. That's our job. Otherwise, we just rubber stamp, as he said, what they did. Judge, I didn't try the case. We never rubber stamp. We always have high deference to a jury verdict. However, not on legal issues. Legal issues, this Court hears de novo. Yeah, but sometimes the ship has left the dock. Here's the problem, though, Judge. We have, and I've given it to you, a statement by this man that he went through this particular way. This isn't he had to go through, and if he forced himself around it three different times, then nothing was hidden. He knew about these stairs. If you look at Elkhorn for a second, and I know Justice McBride has looked at it, it talks about Elkhorn. I know you did. There's a case in there that they cite, though, that doesn't really help you, a staircase. The Elbow case. La Bastille, remember that restaurant case? She went up the stairs going into dinner with her husband. And she came down the stairs after. That's the no-landing case. The door, yes, the no-landing, but the door obscured that fact. Sometimes decisions can be conflicting. So isn't this really what they're claiming? This is sort of obscured? The danger is obscured here? Well, here he goes through this particular door the same way. You look at page, go back to 13. He admitted it. He'd gone through this. This isn't like Elkhorn. That's the first time she goes down the stairs. This gentleman said, I went through it before. I must have gone through it several times before. So this wasn't anything new or hidden. But look at Elkhorn. Elkhorn said, it's at page 16 of our brief, it's dangerous only if the configuration masks or obscures the stairs, the entrance. Here, this gentleman, the best witness we have, he was candid. He was honest. He said, you know, I don't remember it happening this time, but I went through it the same way several other times. So that takes it out of Ward. Ward says if you're forced to go through a dangerous way, he wasn't forced. There was an alternative. One of the considerations we have in terms of deciding whether there's a duty of care is what's the fix? I'm sorry? What's the fix? What should the homeowner have done to have prevented the accident? And, you know, a warning seems not to have been sufficient because he'd been in and out numerous times. And you'd think coming in during the day, it's bright outside, you can see the stairs. So the warning, if he forgot that it was there, he could have forgotten the warning. I mean, how many times do you have to warn someone? And the other question, because it goes to turning the hinges, putting the door on the other side. Putting the door on the other side blocks if it stays perpendicular. The only reason it doesn't open 180 degrees on the other side is because there's a wall. But if you hinge the door on the other side, it would have opened 180 degrees, which would have exposed the stairs entirely. And, in fact, if the handle is far enough away, you have to reach over the stairs to actually grab the handle to bring it back. And you wonder what fix could have been done here. Judge, do you want to? I don't know. But that's interesting because, you know, the only thing I also wanted to point out. We're going to have to wrap it up. Yeah. You know, they keep saying, well, it was a little dark. If you look at the Hansen cases, an open and obvious danger concealed only by darkness does not create liability on the part of the landowner. Judge, what we're doing here. We're not dealing with darkness here. Well, they make the argument. It was dimly. Wasn't it sort of the end of the day and the lighting was dim? But he'd been through that door. Again, we come back to the point, you know, if he forgot, you know, if there's a danger that's open and obvious and you say, you know, in a momentary lapse I forgot it, that doesn't create liability. That just makes you wrong. Interesting enough, the 50 percenter, and I want to touch on this and then I'll shut up. Or excuse me, I'll finish. Sorry. Here you have a jury that basically, if you look at the 50 percent, they might decide, well, he knew the stairs were there. And that raises the question of a special verdict. You had one. But it seemed to me that that special verdict that you required, not you personally because you weren't there. Nor Mr. Wise. Nor Mr. Wise. Who didn't raise any of the issues. But the special verdict seemed not to assist anyone in any way. You could have asked whether it was unreasonably dangerous. I think. I don't know. Or certainly whether he was aware of the stairs or not, like you pointed out. Judge Hubby, we're being blunt. I think if Mr. Wise and I tried the case, it would be a different case. There would be a lot of the evidence would have been different. Some of the arguments would have been different. Maybe. Maybe that will happen, yeah. But I would urge you for this. The bottom line is you have an admitted situation where this gentleman went through this door this way. Look at page 13 of the reply and page 8 of the opening. He went through it in an identical fashion. He was candid. He was honest. He said, yes, I did this. If this is a danger, which I don't think it is, I was aware of it based on going through numerous times. According to Illinois law, if he had a momentary lapse, lost his balance, I'm sorry. It's not a dangerous condition. Very respectfully, I'd ask that the judgment be vacated. Any alternative, we'd request a new trial. I thank the court for its attention. All right. The case will be taken under advisement.